1
2
3
4
5

## UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF CALIFORNIA

7

8     **LLOYD GEORGE KENNEY,**             **CASE NO. 1:12-CR-0266 AWI**

9               **Petitioner**

10              **v.**                    **ORDER PETITIONER'S 28 U.S.C. § 2255 PETITION AND ORDER GRANTING A**

11     **UNITED STATES OF AMERICA,**      **CERTIFICATE OF APPEALABILITY**

12               **Respondent**            (Doc. No. 169)

13
14

15         On December 3, 2015, a jury returned a unanimous verdict against Petitioner Lloyd

16 Kenney, finding him guilty of violations of 18 U.S.C. §§ 922(g) (felon in possession of a firearm),

17 924(c) (carrying and brandishing a firearm during and in relation to a crime of violence), and

18 2113(a) and (d) (armed bank robbery).  <u>See</u> Doc. No. 105.  On March 14, 2016, this Court

19 sentenced Kenney to a total term of imprisonment of 319 months (235 months on the § 2113 and

20 § 922(g) counts, and 84 months to run consecutively on the § 924(c) count).  The sentence

21 included a mandatory minimum 15 year sentence pursuant to 18 U.S.C. § 924(e)(1) because it was

22 determined that Kenney had three or more convictions for "violent felonies."  On February 9,

23 2018, the Ninth Circuit affirmed Kenney's conviction and sentence.  On May 14, 2019, Kenney

24 through counsel filed this petition for relief under 28 U.S.C. § 2255 (hereinafter "§ 2255").  After

25 receiving a court-ordered sur-reply from the United States and a reply to that sur-reply from

26 Kenney, all briefing has now been received.  For the reasons that follow, Kenney's petition will be

27 denied.

28

1

## § 2255 FRAMEWORK

2      28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence of a

3   court established by Act of Congress claiming the right to be released upon the ground that the

4   sentence was imposed in violation of the Constitution or laws of the United States ... may move

5   the court which imposed the sentence to vacate, set aside or correct the sentence."  Under § 2255,

6   a district court must grant a prompt hearing to a petitioner in order to determine the validity of the

7   petition and make findings of fact and conclusions of law, "[u]nless the motions and the files and

8   records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. §

9   2255(b).  The court may deny a hearing if the movant's allegations, viewed against the record, fail

10  to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary

11  dismissal.  United States v. Withers, 638 F.3d 1055, 1062-63 (9th Cir. 2011); Baumann v. United

12  States, 692 F.2d 565, 571 (9th Cir. 1983).  A petitioner is not required to allege facts in detail, but

13  he "must make factual allegations" and cannot rest on conclusory statements.  Baumann, 692 F.2d

14  at 571; United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980).  Accordingly, an evidentiary

15  hearing is required if: (1) a petitioner alleges specific facts, which, if true would entitle him to

16  relief; and (2) the petition, files, and record of the case cannot conclusively show that the

17  petitioner is entitled to no relief.  United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004).

18  Additionally, "[w]hen a defendant has raised a claim and has been given a full and fair opportunity

19  to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255

20  petition."  United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000); see United States v. Redd,

21  759 F.2d 699, 701 (9th Cir. 1985); Battaglia, 428 F.2d at 960; see also United States v. Jingles,

22  702 F.3d 494, 498-500 (9th Cir. 2012).

23

24

## § 2255 PETITION

25      *Petitioner's Argument*

26      Kenney argues that he is entitled to relief because he does not have three prior convictions

27  for crimes of violence under § 924(e).  One of the felonies that was relied upon by the pre-

28  sentence report was a 1974 conviction for kidnapping, in violation of Cal. Pen. Code § 207

1   (hereinafter "§ 207").  The Ninth Circuit has previously held that § 207 is a "violent felony" under

2   § 924(e)(2)(B)(3), known as the "residual clause."  However, the residual clause has been held to

3   be unconstitutionally vague by the Supreme Court.  Thus, § 207 must fit within the

4   "force/elements" clause of § 924(e)(2)(B)(1) to constitute a crime of violence.  Courts use the

5   categorical approach to determine whether an offense always has as an element the use, attempted

6   use, or threatened use of physical force against a person and thus, fall under the force clause.

7   California courts have held that § 207 can be violated without the use of sufficient physical force

8   and thus, it is not categorically a crime of violence..  For example, a California court has upheld a

9   conviction under § 207 when a defendant pretended to be a police officer, ordered the victim to get

10   into the car and then drove "some distance" away.  See People v. Broyles, 151 Cal.App.2d 428

11   (1957); see also People v. Majors, 33 Cal.4th 321, 330 (2004) (finding that an implicit threat of

12   arrest satisfies the force requirement).  Another court has held that a parent getting into a car and

13   then remaining in the car as it drove and made stops was a kidnapping where the defendant had

14   taken custody of the parent's child.  See People v. Felix, 92 Cal.App.4th 905 (2001).  Another

15   court has held that holding a person around his or her shoulders and having them walk at a faster

16   than normal pace is sufficient force.  See People v. Dejourney, 192 Cal.App.4th 1091, 1115

17   (2011).  Finally, the California Supreme Court has held that when a victim is a child or an

18   incapacitated adult, the "force" necessary for a violation of § 207 is only what is necessary to

19   move the victim, so long as the defendant acted with an illegal purpose or intent.  See In re Michel

20   D., 29 Cal.4th 600 (2002).  Because these cases show that the "force" required to commit

21   kidnapping under § 207 is not severe enough to make it a "violent felony" under the § 924(e)(2)

22   force clause, Kenney argues that his § 207 conviction can no longer be used for the § 924(e)(1)

23   enhancement and resentencing is necessary.

24       Kenney also argues that his attorney was constitutionally ineffective for failing to object to

25   the presentencing report, failing to file a sentencing memorandum, and failing to present an

26   argument at the sentencing hearing.  Kenney argues that this was deficient because he did not have

27   three prior conviction for "serious drug offenses" or "violent felonies" for purposes of § 924(e)(1),

28   as discussed above.

1    *Respondent's Opposition*

2         In part, the United States argues that Kenney's first ground for relief should be denied

3    because the propriety of using the § 207 conviction was raised on direct appeal and rejected by the

4    Ninth Circuit.  All of the arguments made by Kenney in this Court were made by Kenney at the

5    Ninth Circuit.  The rejection of the claim on direct appeal precludes Kenney from now raising it as

6    part of a § 2255 petition.

7         The United States also argues that, per *Stokeling v. United States*, 139 S.Ct. 544 (2019), the

8    § 924(e)(2) "force/elements clause" only requires the amount of force necessary to overcome a

9    victim's resistance.  The force required to kidnap an individual in violation of § 207 is something

10   more than the quantum of physical force necessary to affect the movement of the victim from one

11   location to another, it is force enough to overcome the victim's free will.  This understanding of

12   § 207 is consistent with *Stokeling*.  Therefore, because § 207 requires an amount of force that is

13   sufficient to overcome a victim's resistance, it meets the § 924(e)(2) force clause, and defense

14   counsel was not ineffective for failing to argue to the contrary.

15        In sur-reply, the United States argues that, per *People v. Majors*, kidnapping under § 207 is

16   consistent with *Stokeling*, and many cases cited by Kenney are addressed in *Majors*.  The United

17   States also argues that, through rulings by the California Supreme Court, § 207 is divisible and

18   subject to the modified categorical approach for determining a crime of violence.  California

19   Supreme Court rulings show that kidnapping an individual who is incapable of giving consent is a

20   separate crime under § 207.  Because documents indicate that Kenney kidnapped an individual

21   who was capable of giving consent, he necessarily used an amount of force consistent with

22   *Stokeling* and thus, committed a crime of violence.

23        *Discussion*

24        1.    Application of the Law of the Case Doctrine

25        As the United States has correctly pointed out, if Kenney raised the issue of whether § 207

26   qualifies as a crime of violence on direct appeal, and the Ninth Circuit decided the issue, then the

27   Ninth Circuit's "decision is the law of the case."  Jingles, 702 F.3d at 498.  The law of the case

28   doctrine applies in § 2255 proceedings and ordinarily precludes a court from reexamining an issue

4

1  previously decided by the same court, or a higher court, in the same case. Id. at 499. For the law

2  of the case doctrine to apply, "the issue in question must have been decided explicitly or by

3  necessary implication in the previous disposition." Id.

4      The Ninth Circuit resolved Kenney's challenge to using his § 207 conviction as a crime of

5  violence through application of the "plain error" standard. See Kenney, 724 F. App'x at 555.

6  "Plain error" review has four components: (1) an error was committed, (2) the error was plain or

7  obvious, (3) the error affected substantial rights, and (4) the error seriously affects the fairness,

8  integrity, or public reputation of judicial proceedings. Hoard v. Hartman, 904 F.3d 780, 787 (9th

9  Cir. 2018); United States v. Gnirke, 775 F.3d 1155, 1164 (9th Cir. 2015). For purposes of the

10 second prong, "mere error" is not enough, rather the error must be sufficiently clear at the time of

11 trial that error is obviously being committed. Hoard, 904 F.3d at 790. If there is no controlling

12 authority on an issue, and the most closely analogous precedent leads to conflicting results, then

13 an error regarding that issue cannot be plain or obvious. Gnirke, 775 F.3d at 1164; see also United

14 States v. Carthorne, 878 F.3d 458, 464 (4th Cir. 2017) ("An error can be 'plain' only on the basis

15 of settled law.").

16      The Ninth Circuit found no "plain error" because there was a failure of the second

17 component. See Kenney, 724 F. App'x at 555. Specifically, the Ninth Circuit found that there

18 was no controlling authority that had construed § 207 and § 924(e). Id. Without "settled law" or

19 "controlling authority," an error cannot be plain or obvious. See Carthorne, 878 F.3d at 464;

20 Gnirke, 775 F.3d at 1164. The Ninth Circuit did not hold that no error was committed, nor can the

21 Ninth Circuit's opinion be read as holding by necessary implication that no error occurred. An

22 error that is not obvious is still an error, and it is only plain or obvious errors that warrant reversal

23 under the "plain error" standard. Hoard, 904 F.3d at 790. Simply put, the finding of "no plain

24 error" because there is an absence of controlling authority does not mean, either expressly or by

25 necessary implication, that Kenney's counsel did not commit any prejudicial error. See id.

26 Because the Ninth Circuit's opinion does not address, either expressly or through necessary

27 implication, the issue of whether § 207 is a crime of violence for purposes of § 924(e), the law of

28 the case doctrine does not bar Kenney's § 2255 challenge.

1      2.      Crime of Violence Under § 924(e)

2              a.      Legal Standard

3       Under 18 U.S.C. § 924(e), a person who is convicted of *inter alia* being a felon in

4 possession of a firearm (in violation of 18 U.S.C. § 922(g)(1)) and who has three previous

5 convictions for "violent felonies," shall be imprisoned for not less than fifteen years. See 18

6 U.S.C. § 924(e)(1); United States v. Strickland, 860 F.3d 1224, 1226 (9th Cir. 2017).  A "violent

7 felony" is defined under the "force clause" of § 924(e)(2) as a crime punishable by imprisonment

8 for a term exceeding one year and "has as an element the use, attempted use, or threatened use of

9 physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i); Strickland, 860 F.3d at

10 1226.  "Physical force" means "force capable of causing physical pain or injury," and includes

11 "the amount of force necessary to overcome a victim's resistance."  Stokeling v. United States, 139

12 S. Ct. 544, 553-55 (2019); United States v. Dominguez, 954 F.3d 1251, 1258-59 (9th Cir. 2020).

13 A "threatened use of force" requires "at least an implicit threat to use the type of violent physical

14 force necessary to meet the [*Stokeling*] standard."  Dominguez, 954 F.3d at 1260 (citation

15 omitted).

16      To determine whether a predicate offense has "as an element the use, attempted use, or

17 threated use of physical force against the person of another," courts employ the categorical

18 approach.  Dominguez, 954 F.3d at 1259; Strickland, 860 F.3d at 1226.  Under this approach, the

19 sole focus is on the elements of the relevant statutory offense, not on the facts underlying the

20 convictions.  Dominguez, 954 F.3d at 1259; United States v. Watson, 881 F.3d 782, 784 (9th Cir.

21 2018).  An offense is categorically a crime of violence only if the least violent form of the offense

22 qualifies as a crime of violence.  Dominguez, 954 F.3d at 1259; Watson, 881 F.3d at 784.  Courts

23 examine the text of the statute and the state courts' interpretation of the statute's terms.

24 Strickland, 860 F.3d at 1226.  To identify the elements of a state crime, courts employ that state's

25 rules of statutory construction.  Almanza-Arenas v. Lynch, 815 F.3d 469, 475-76 (9th Cir. 2016)

26 (en banc).  "State cases that examine the outer contours of the conduct criminalized by the state

27 statute are particularly important because [courts] must presume that the conviction rested upon

28 nothing more than the least of the acts criminalized by that statute."  United States v. Walton, 881

1  F.3d 768, 771-72 (9th Cir. 2018); <u>Strickland</u>, 860 F.3d at 1226-27.  In the absence of a ruling by a

2  state's highest court, federal courts are bound by reasoned intermediate state court rulings.

3  <u>Walton</u>, 881 F.3d at 772.

4         If the terms of the state statute or the cases construing the state statute demonstrate that the

5  use or threatened use of physical force is not required to obtain a conviction, then the offense will

6  not fit within the force clause of § 924(e)(2).  <u>See</u> <u>Strickland</u>, 860 F.3d at 1227.  If a statute is

7  "divisible," meaning that the statute contains multiple alternative sets of elements that define

8  multiple distinct crimes, then courts may consult a limited class of extra-statutory documents to

9  determine which statutory elements formed the basis of the defendant's prior conviction.  <u>See</u>

10 <u>Descamps v. United States</u>, 570 U.S. 254, 260-62 (2013); <u>Altayar v. Barr</u>, 947 F.3d 544, 549 (9th

11 Cir. 2020).  If a conviction to a divisible crime is based on a guilty plea, courts may examine the

12 charging document, written plea agreement, transcript of plea colloquy, and any explicit factual

13 finding made by the trial judge to which the defendant assented."  <u>Altayar</u>, 947 F.3d at 549.  Once

14 it is determined which part of a divisible statute formed the basis of the prior offense, the federal

15 court will determine whether those elements meet the requirements of the "force clause."  <u>United</u>

16 <u>States v. Werle</u>, 877 F.3d 879, 881 (9th Cir. 2017).

17         b.    <u>Kenney's Criminal History</u>

18        Prior to his 2016 conviction in this Court, the pre-sentence report noted that Kenney had

19 five prior convictions.  In December 1974, Kenney was sentenced in San Mateo County to five

20 years to life for "armed robbery."  No Penal Code citation is identified.  In October 1974, Kenney

21 was sentenced in Los Angeles County to five years to life in prison for two convictions, one for

22 robbery and one for kidnapping for robbery.  However, documents submitted by the parties show

23 that Kenney was not convicted of kidnapping for robbery, rather he was only convicted of general

24 kidnapping in violation of § 207.  In October 1984, Kenney was sentenced to 25 years in prison by

25 the federal court for the District of Oregon for armed bank robbery.  Finally, in October 1985,

26 Kenney was sentenced to 25 years in prison by the federal court for the Eastern District of

27 California for armed bank robbery.  On direct appeal from the conviction in this court, the Ninth

28 Circuit held that Kenney's two prior federal armed bank robbery convictions were crimes of

7

1   violence for purposes of § 924(e).  See Kenney, 724 F. App'x at 555-56.  Thus, in order for the

2   § 924(e) enhancement to apply, one of the three 1974 state convictions must fit within the

3   § 924(e)(2) force clause.

4                    (1)    1974 San Mateo Conviction

5         The Ninth Circuit has held that robbery in violation of California Penal Code § 211 is not a

6   crime of violence under the force clause because robbery can be committed through unintentional

7   conduct.  See United States v. Dixon, 805 F.3d 1193, 1197 (9th Cir. 2015).  There is no

8   information or documents before the Court that show precisely what Kenney was charged with

9   and convicted of with respect to the 1974 San Mateo conviction.  Without the charging documents

10   or plea documents, the Court will assume that Kenney was convicted simply of violating § 211.

11   With this assumption, *Dixon* prevents the San Mateo conviction from being classified as a crime

12   of violence under the force clause.[1]  See id.

13                    (2)    § 207 Kidnapping Conviction[2]

14                    (A)    Categorical Approach

15         In 1974, California Penal Code § 207 read in relevant part:  "Every person who forcibly

16   steals, takes, or arrests any person in this state, and carries him into another country, state, or

---

[1] The United States also argues that Kenney's 1974 Los Angeles County robbery conviction is distinguishable from *Dixon* and is a "crime of violence."  The charging documents, amended judgment, and plea colloquy relating to that conviction indicate that an enhancement under Penal Code § 12022.5, which enhanced a sentence for the use of a firearm, was charged, admitted, and found to be true.  Under *People v. Chambers*, 7 Cal. 3d 666, 672 (1972), a level of force or threat of force consistent with *Stokeling* was required under Penal Code § 12022.5 in 1974  Although most district courts find that  § 12022.5 is an enhancement only and not an element of a crime, e.g. United States v. Heflin, 195 F.Supp.3d 1134 (E.D. Cal. 2016), the United States argues that pursuant to *Alleyne v. United States*, 570 U.S. 99, 107-08 (2013), an enhancement like § 12022.5 is actually an element of the offense.  While cases like *Heflin* do not discuss *Alleyene*, *Ramirez v. Lynch*, 810 F.3d 1127, 1135 n.2 (9th Cir. 2016) appears to foreclose the United States' arguments because it refused to consider the effects of an enhancement when it found the underlying penal code conviction (Penal Code § 273a(a)) was indivisible.  However, *Ramirez* is arguably dicta on that point because the relevant analysis is one sentence long, the opinion also contained an alternative holding that the enhancement involved (Cal. Penal Code § 12022.7) does not meet the definition of a "crime of violence," and the opinion does not discuss *Alleyene* or the possible implication from *Alleyene* that an enhancement like § 12022.5 adds a new element and thus, creates a new offense that is not simply a violation of an otherwise non-divisible statute.  See Ramirez, 810 F.3d at 1135 n.2.  Nevertheless, because the Court finds that Kenney's § 207 conviction is a crime of violence, the Court need not rule whether the Los Angeles conviction under Penal Code § 211 is a crime of violence.  It is enough to note that reasoned arguments have been made that attempt to distinguish *Dixon* from the Los Angeles County robbery conviction.

[2] In 1990, § 207 was amended to read, "Every person who forcibly, or by any other means of instilling fear, steals, or takes or holds, detains, or arrests any person in this state . . . ."  People v. Majors, 33 Cal.4th 321, 326 (2004).  The Court's reference to § 207 or "kidnapping" or "general kidnapping" unless otherwise noted is a reference to the 1974 version, i.e. the pre-1990 version, of § 207, which served as the basis of Kenney's conviction.

1  county, or into another part of the same county . . . is guilty of kidnapping." Cal. Pen. Code § 207

2  (1974 ed.)[3]; People v. Stanworth, 11 Cal.3d 588, 599 n.12 (1974).

3      In 1972, it was established that general kidnapping under § 207 could "only be

4  accomplished by the use or threat of force." People v. Rhoden, 6 Cal.3d 519, 527 (1972).

5      In 1974, the California Supreme Court affirmed one count of § 207 as it related to one

6  victim (Mrs. Anderson), but reversed two other counts of § 207 kidnapping as they related to two

7  other victims (Mr. Anderson and Mr. del Bucchia). See People v. Stephenson, 10 Cal.3d 652,

8  659-60 (1974). The *Stephenson* court explained that the "distinction is that Mrs. Anderson *was*

9  *forcibly* required by defendant to get into his car against her will and that he transported her

10 several blocks . . . . The two men, and originally Mrs. Anderson, were enticed to get voluntarily

11 into defendant's car by deceit or fraud." Id. at 659 (emphasis in original). *Stephenson* reiterated

12 *Rhoden*'s holding that "a general act of kidnapping . . . can only be accomplished by use of threat

13 or force." Id. at 660. As to the victim Mrs. Anderson, her reentry into the automobile was

14 "against her will and was accomplished by means of threats and fear. While the statute requires

15 force as an operative act, the force need not be physical. The movement is forcible where it is

16 accomplished through the giving of orders which the victim feels compelled to obey because he or

17 she fears harm or injury from the accused and such apprehension is not unreasonable under the

18 circumstances." Id. at 660.

19     In 1976, the California Supreme Court addressed kidnapping in the context of a voluntary

20 entry into an automobile. The California Supreme Court noted that § 207 "encompasses any

21 movement of a victim which is substantial in character and accomplished by means of force or

22 threat of force." People v. Camden, 16 Cal.3d 808, 814 (1976) (internal citations omitted). The

23 *Camden* court found that it would be an unreasonable interpretation of § 207 to exclude "those

24 asportation which although voluntarily initiated are continued by means of threat or force." Id.

25 Thus, convictions under § 207 will stand if, "although the initial entry was voluntary, the victim

26 was subsequently restrained therein by means of threat or force while asportation continued." Id.

27

28 [3] The parties acknowledge that the 1974 version of § 207 included additional separate offenses that are not at issue. See Doc. No. 183 at 7:28-8:16; Doc. No. 184 at 6:15-18.

1    In 2000, the California Supreme Court held that § 207(a) "generally requires that the

2 defendant use force or fear." People v. Hill, 23 Cal.4t h 853, 856 (2000).  Importantly, *Hill* also

3 approved and quoted *People v. Moya*, 4 Cal.App.4th 912, 916 (1992) as follows:  "If a person's

4 free will was not overborne by the use of force or the threat of force, there was no kidnapping."

5 Hill, 23 Cal.4th at 856.  *Moya* cited *Stephenson* for this proposition.  See Hill, 23 Cal.4th at 856

6 (noting that *Moya* cited *Stephenson*); Moya, 4 Cal.App.4th at 916 (citing Stephenson, 10 Cal.3d at

7 959).  Therefore, *Hill* accepted a characterization of general kidnapping that was based on

8 *Stephenson* and the 1974 version of § 207.

9    These cases recognize that § 207 requires physical force or the implicit threat of harm from

10 physical force to accomplish movement.  That is, *Rhoden*, *Stephenson*, *Camden*, and *Hill* indicate

11 that either physical force or the implicit threat of physical force is necessary to overcome a

12 person's will and thus, accomplish movement.  This is consistent with § 924(e)(2), *Stokeling*, and

13 *Dominguez*.

14    Kenney cites a number of cases that he contends demonstrates that something less than the

15 force described in *Stokeling* is sufficient for kidnapping under § 207.  After review, the Court does

16 not find these cases persuasive.

17    Kenney cites *People v. Fick*, 89 Cal. 144, 147 (1891) as an example of a case in which no

18 "physical force" was used by the defendant, yet a § 207 general kidnapping conviction was

19 upheld.  In *Fick*, a constable executed an arrest warrant on the victim, but instead of taking the

20 victim to the jail, Fick took the victim to a "house of ill repute" and left her there.  See Fick, 89

21 Cal. at 147.  In *People v. Majors*, the California Supreme Court held that force was not an issue in

22 *Fick*, so there was no discussion of force within that opinion.  See People v. Majors, 33 Cal.4th

23 321, 328-29 (2004).  Prior to *Majors*, *Fick* had never (and still has never) been cited by the

24 California Supreme Court with respect to kidnapping.  *Majors*'s observation of *Fick*, that it did not

25 actually address the force issue, is both correct and controlling.  *Fick* does not aide Kenney.

26    Kenney cites *People v. Broyles*, 151 Cal.App.2d 428 (1951) as another example of a case

27 in which no "physical force" was used by the defendant, yet a § 207 conviction was upheld.  In

28 *Broyles*, a victim entered a car at the orders of a defendant who falsely identified himself as a

deputy sheriff.  See Broyles, 151 Cal.App.2d at 429.  *Majors* also addressed *Broyles* and found

that *Broyles* is ambiguous regarding what conduct was found sufficient to support a kidnapping

conviction.  See id. at 330.  "In *Broyles*, it is unclear whether the Court of Appeal concluded the

totality of the evidence was sufficient to demonstrate kidnapping, or whether it had alternative

bases for its hold, i.e. that the evidence demonstrated kidnapping both when the victim entered the

car because of orders form apparent police officers she felt compelled to obey, and when force

was later applied during the asportation."  Id.  Prior to *Majors*, the California Supreme Court cited

to *Broyles* in *Stephenson* to support the proposition that movement "is forcible where it is

accomplished through the giving of orders which the victim feels compelled to obey because he or

she fears harm or injury from the accused and such apprehension is not unreasonable under the

circumstances."  Stephenson, 10 Cal.3d at 660.  Pursuant to *Majors*, *Broyles* is an ambiguous case

with respect to a force analysis, which means that it is not binding precedent for purposes of the

categorial approach.  See Walton, 881 F.3d at 772.  In 1974, however, *Broyles* was considered to

be supportive of the theory that the giving of orders was sufficiently forceful to support a

kidnapping conviction where the victim feels compelled to obey out of a reasonable fear of harm

or injury.  See Stephenson, 10 Cal.3d at 660.  That particular type of fear is tantamount to a threat

to cause injury through a use of force and is consistent with § 924(e)(2), *Stokeling*, and

*Dominguez.  Broyles* does not aide Kenney.

Kenney also cites *People v. Dejourney*, 192 Cal.App.4th 1091, 1115 (2011) for the

proposition that holding a person around his or her shoulders and having them walk at a faster

pace than they otherwise would is sufficient force under § 207.  Kenney's characterization is based

on the following passage:

> From the evidence that [Dejourney] continued to hold [the victim] around her
> shoulders during the bus trip, pulling her closer to him when she tried to look
> around as if he were controlling her movements, *and the fear she exhibited* in [the
> restaurant] when asking the cashier to call 911 and her quietness when Dejourney
> entered the restaurant and left with her, with his arm again around her should and
> moving her at a pace faster than she could walk, the jury could have reasonably
> inferred that Dejourney forcefully pushed [the victim] beyond her capabilities to
> move her to the dumpster area without her consent  while continuing to instill fear
> in her after leaving [the restaurant].

Id. at 1115.

1    The Court cannot find that *Dejourney* supports Kenney.  First, the quoted analysis focused

2    largely on the victim's fear.  See id.; see also id. at 1114.  The version of § 207(a) applicable in

3    *Dejourney* applied to "[e]very person who forcibly, *or by any other means of instilling fear . . . .*"

4    Id. at 1114 (emphasis added).  That is not the version of § 207 that applies in this case.[4]  Second,

5    the quoted passage indicates that the victim was led at a pace that was quicker than she could

6    manage and had been traumatized to a point "beyond her capabilities," i.e. beyond a point that she

7    could resist.  See id.  The next sentence after the quoted language was:  "The jury also could have

8    concluded that [the victim's] statements to the 911 operator and the police detective made closer

9    to the time of her ordeal that Dejourney had dragged her into the dumpster area were more

10   accurate than her trial testimony, which she explained was a struggle 'to fetch [her] memory.'"  Id.

11   at 1115-16.  The prosecution's theory apparently was that Dejourney "put his arm around [the

12   victim's] shoulder and walked at a *fast pace that she could not control, essentially dragging her* to

13   a fenced dumpster area behind the business."  Id. at 1098.  These passages do not support the

14   characterization that the victim was simply led at a pace that was faster than she would otherwise

15   walk.  These passages show that the victim was physically dragged at a pace that she could not

16   meet and that she did not have the capability to resist the physical force being applied to her.  In

17   other words, Dejourney applied an amount of force that was sufficient to overcome the victim's

18   will and resistance.  Cf. Stokeling, 139 S. Ct. at 555.  Therefore, *Dejourney* either relied heavily

19   on a portion of § 207 that was not in existence in 1974 or involved conduct that appears to meet

20   *Stokeling*'s standard.  Either way, *Dejourney* does not sufficiently lessen or undermine the analysis

21   of force in *Rhoden*, *Stephenson*, *Camden*, or *Hill*.

22        Kenney cites *People v. Felix*, 92 Cal.App.4th 905, 910 (2001), for the proposition that a

23   defendant is guilty of kidnapping a parent when he takes custody of the parent's child and the

24   parent accompanies the defendant out of concern for the child's safety, even where no physical

25   force is threatened or employed on either the parent or the child.  In *Felix*, despite a restraining

26   order, Felix grabbed a car seat that had the victim's three-year old daughter and put the car seat in

27

28   [4] The Court notes that *Dejourney* post-dates Kenney's conviction by 37 years.  How accurately *Dejourney* reflected
     the state of the law in 1974 is debatable.

12

his car.  See Felix, 92 Cal.App.4th at 908.  Felix told the victim to get in the car and that this was
the only way he had of talking to the victim.  See id.  The victim complied because she was afraid
for her daughter's safety and believed that Felix would not give her daughter back.  See id.  Felix
drove the victim and the daughter around for 45 minutes, stopped the car three times, and refused
12 requests to take the victim and her daughter home before finally relenting.  See id. at 909.

The Court cannot find that *Felix* supports Kenney.  First, the issue that was appealed by
*Felix* was whether the victim had voluntarily consented to accompany him.  See id. at 910.  Felix
did not challenge the sufficiency of the evidence with respect to force.  Thus, this is a situation that
is similar to *Fick* in that the force issue was not necessary to resolve on appeal and was not clearly
and expressly addressed.  Second, the *Felix* court noted that § 207(a) applied to "[e]very person
who forcibly, or by any other means of instilling fear . . . ."  Id. at 910.  The court then noted, as
part of its discussion regarding consent, that the victim was afraid for her daughter's safety.  See
id.  Thus, the conviction could arguably be supported on the basis of language that was not part of
the 1974 version of § 207.[5]  Third, the evidence showed that Felix drove the car for about 45
minutes, although he did make three stops.  It is well known that major bodily injuries can result
from trying to exit a moving vehicle.  Keeping a car moving so as to prevent a person from exiting
(because they would suffer physical injury in that process) would seem to be a use of force or
threat of force under *Rhoden*, *Stephenson*, *Camden*, *Stokeling*, and § 924(e)(2).  Cf.  Camden, 16
Cal.3d at 814-15 (noting the various ways that a victim was forcibly restrained in an automobile,
including the use of high speeds and centrifugal force).  For at least these three reasons, the Court
cannot find that *Felix* lessens or undermines the discussion of force in *Rhoden*, *Stephenson*,
*Camden*, or *Hill*.

Kenney also relies on *Majors* for the proposition that the California Supreme Court has
recognized that merely making a threat of arrest is sufficient force for kidnapping, irrespective of
whether physical force is actually threatened.  In *Majors*, the California Supreme Court reviewed a
kidnapping conviction in which the defendant falsely represented that he was a mall security

---

[5] The Court notes that *Felix* post-dates Kenney's 1974 conviction by 27 years.  How accurately *Felix* reflected the
state of the law in 1974 is debatable.

1  officer investigating a shoplifting charge and ordered the victim to accompany him but did not

2  expressly threaten the use of force.  Majors, 33 Cal.4th at 324.  The issue was whether "movement

3  accomplished by the implicit threat of arrest satisfies the elements of force or fear in § 207(a), or

4  whether such movement is simply asportation by fraud."  Id. at 328.[6]  The *Majors* court found no

5  prior cases were on point.  See id. at 330.  Nevertheless, *Majors* eventually concluded that "an

6  implicit threat of arrest satisfies the force or fear element of § 207(a) kidnapping if the defendant's

7  conduct or statements cause the victim to believe that unless the victim accompanies the defendant

8  the victim will be forced to so, and the victim's belief is objectively reasonable."  Id. at 331.

9  *Majors* reached this conclusion after observing that "the threat of arrest carries with it the threat

10 that one's compliance, if not otherwise forthcoming, *will be physically forced*.  Thus, the use of

11 force is implicit when an arrest is threatened.  Contrary to defendant's assertion, 'being arrested' is

12 not an 'esoteric' fear that stretches the meaning of the statute. . . .  The compulsion, which is the

13 gravamen of the crime of kidnapping, remains present."  Id. (emphasis added).

14        The Court does not find that *Majors* supports Kenney.  First, the basis for *Majors*'s holding

15 was that a threat of arrest carries with it the further implicit threat that physical force to gain

16 compliance will be used if compliance is not forthcoming.  See id.  This view of an arrest carries

17 with it a description of force or threat of force that would seem to be consistent with *Stokeling* and

18 § 924(e)(2).  Kenney argues that the United States cites no cases that have held that a mere threat

19 of arrest can be considered forcible under *Stokeling*.  However, Kenney cites no cases that have

20 rejected the reasoning of *Majors* or held that no implicit threat of force can be reasonably found

21 through the threat of arrest.  As noted above, the Ninth Circuit has recognized that threats of force

22 can be implicit.  See Dominguez, 954 F.3d at 1260.  The Court cannot hold that it is unreasonable

23 to view a threat of arrest as implicitly carrying with it a threat to use physical force to gain

24 compliance.  Second, *Majors* surveyed exiting California law and held that there were no cases

25 that were sufficiently on point or controlling with respect to the issue presented.  Majors, 33

26 Cal.4th at 330.  That means that prior to 2004, there were no California cases that clearly held that

27

28 ───────────────
[6] The Court notes that *Majors* post-dates Kenney's conviction by 30 years.  How accurately *Majors* reflects the state
of the law in 1974 with respect threats of arrest is debatable.

a threat of arrest could support the force element of § 207 kidnapping. Not until 2004 was the issue squarely addressed and decided through a reasoned and binding opinion. Therefore, in 1974, § 207's force requirement was not met by the mere threat of arrest. Cf. Walton, 881 F.3d at 772 (holding that federal courts are bound by the reasoned intermediate state court rulings in the absence of a ruling from the state's highest court). *Majors*'s holding does not undermine the force analysis of *Rhoden*, *Stephenson*, *Camden*, and *Hill* with respect to Kenney's § 207 conviction.

Finally, Kenney relies on *In re Michele D.*, 29 Cal.4th 600 (2002) and *People v. Oliver*, 55 Cal.2d 761 (1961), cases in which the kidnapping victim was a minor/infant and thus, incapable of giving consent to be moved. *Oliver* addressed a child victim who was incapable of giving consent and *Michele D.* addressed what force was necessary to effectuate the kidnapping of an unresisting infant. See In re Michelle D., 29 Cal.4th at 603; Oliver, 55 Cal.2d at 764-65. *Michele D.* described *Oliver* as holding that § 207, "as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal content thereto, . . . [constitutes] kidnapping only if the taking and carrying away is done for an illegal purpose or with an illegal intent." Id. at 607 (quoting Oliver, 55 Cal.2d at 768). *Michele D.* recognized that two courts of appeal in dicta had read *Oliver* as implying or indicating that the force requirement can be eliminated or relaxed if the victim is too young to give consent and the kidnapping was done for an illegal purpose or motive. Id. at 608-09 (discussing People v. Rios, 177 Cal.App.3d 445, 451 (1986) and People v. Parnell, 119 Cal.App.3d 392, 402-03 n.3 (1981)). *Michelle D.* could not identify where in *Oliver* it was suggested that the force requirement could be eliminated or relaxed where the victim was an infant or young child, particularly when *Oliver* used the term "forcible" to describe the taking and carrying away of the child victim. See id. at 609. Nevertheless, *Michele D.* found that the lower courts' observations regarding *Oliver* had some merit because consent and force are intertwined. See id. *Michele D.* concluded that the "holding in *Oliver* -- that, where the victim by reason of youth or mental incapacity can neither give consent nor withhold consent, kidnapping is established by proof that the victim was taken for an improper purpose or improper intent – was *reasonably extended* by *Parnell* and *Rios* to encompass situations in which, because of the victim's youth, there is no evidence the victim's

will was overcome by force." Id. (emphasis added).  *Michele D.* also noted that *Hill* had signaled at least a tacit agreement with *Rios* and *Parnell*.  See id. at 609-10.  *Michele D.* explained that *Hill* expressly noted that *Hill* "need not and [did] not decide whether, or to what extent, the *Oliver* decision eliminated the need to show as to a child force or fear in addition to an illegal purpose." Id. (quoting Hill, 23 Cal.4th at 857).  *Michele D.* then noted that *Hill* quoted *Rios* for the proposition that "*Oliver* indicated that in kidnapping cases the requirement of force may be relaxed where the victim is a minor who is 'too young to give his legal consent to be taken' and the kidnapping was done for an improper purpose."  Id. at 610 (quoting Hill, 23 Cal.4th at 858 (quoting Rios, 177 Cal.App.3d at 451)).  *Michele D.* agreed with *Hill*, *Rios*, and *Parnell* that "infants and young children are in a different position vis-à-vis the force requirement for kidnapping than those who can apprehend the force being used against them and resist it."  Id. *Michele D.* then set a new standard:  "the amount of force required to kidnap an unresisting infant or small child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent."  Id.  This description of "force" is inconsistent with *Stokeling*.  Cf. id. with Stokeling, 139 S.Ct. at 553-55

   Although *Michele D.* clearly describes a quantum of force that is insufficient under *Stokeling* to meet the criteria of a "crime of violence," the Court cannot find that *Michele D.* is dispositive of a categorical analysis of § 207.  As discussed above, *Michele D.* noted that the holding of *Oliver* dealt with consent, the holding did not expressly address force.  See In re Michele D., 29 Cal.4th at 607.  Consistent with the issue that was actually decided in *Oliver*, *Michele D.* expressed skepticism about *Rios* and *Parnell*'s interpretation of *Oliver* because the holding of *Oliver* used the term "forcible taking."  While *Michele D.* ultimately agreed that the force requirement could be relaxed for infants or young children, of critical importance, it also described *Rios* and *Parnell* as "extending *Oliver*" to find sufficient force for kidnapping in the case of an unresisting infant.  See id. at 609.  If *Oliver* was "extended," that means that *Oliver* did not actually hold that the force requirement in cases involving an infant/young child victim can be relaxed.  It was not until 1981 in *Parnell* that there was arguably a reasoned California case that relaxed the force requirement for infant kidnapping victims.  Cf. Walton, 881 F.3d at 772 (holding

that federal courts are bound by the reasoned intermediate state court rulings in the absence of a ruling from the state's highest court). *Parnell* was decided seven years after Kenney was convicted. In 1974, only *Oliver* had been decided. In the absence of any case "extending" *Oliver* prior to *Parnell*, the Court must conclude that kidnapping under the 1974 version of § 207 did not provide for the relaxation of the force requirement for an infant victim. Cf. id.

In sum, the Court concludes that the minimum amount of force that was necessary to commit general kidnapping under the 1974 version of § 207 is the force described in *Rhoden*, *Stephenson*, *Camden*, and *Hill*, and that amount of force meets the requirements for a crime of violence under § 924(e)(2) and *Stokeling*.

(B)    Modified Categorical Approach

Alternatively, the Court will assume that *Oliver* in 1961 lowered the amount of force necessary for the kidnapping of an unresisting infant or small child to a point that falls outside of *Stokeling*'s description of "force." Under this assumption, the Court then shifts to the modified categorical approach.

Again, in 1974, § 207 read in relevant part: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county . . . is guilty of kidnapping." Cal. Pen. Code § 207 (1974 ed.). At first blush, the relevant portion of § 207 does not seem to be divisible as it does not appear to contain multiple alternative sets of elements that define multiple distinct crimes. Cf. id. with Altayar, 947 F.3d at 549. However, the California Supreme Court in *Oliver* examined § 207 to determine what crimes may be contained therein.

As indicated above, the issue in *Oliver* was how to evaluate kidnapping when the victim was too young or incapacitated to validly give consent. See Oliver, 55 Cal.2d at 764-65. *Oliver* recognized that, because an infant was incapable of giving consent, and because the forcible moving without consent of someone capable of giving consent is kidnapping irrespective of motive, there was a real danger that a person who merely escorts an infant from point A to point B without any improper motive could be convicted under § 207. Id. *Oliver* concluded that the "rule governing the forcible carrying of conscious persons capable of giving consent, which makes a

17

person who forcibly carries such a person and transports him against his will guilty of kidnapping,

however good or innocent his motive or intent may otherwise be, can only lead to an obvious

injustice and a perversion of the legislative purpose if blindly and literally applied where the

person who is forcibly transported, because of infancy or mental condition, is incapable of giving

his consent." Id. at 766.   To confront this injustice, *Oliver* reasoned:

> The courts are not powerless to read exceptions into the law when confronted by a
> criminal statute which literally interpreted would lead to the conviction of crime in
> cases to which it is obvious that the Legislature cannot have intended the statute to
> apply.
>
> The governing rule of construction in cases of this character was stated by this
> court in *Ex parte Lorenzen*, 128 Cal. 431, at pages 438-440: "[It] is to be
> remembered that the letter of a penal statute is not of controlling force, and that the
> courts, in construing such statutes, from very ancient times have sought for the
> essence and spirit of the law and decided in accordance with them, even against
> express language; and in so doing they have not found it necessary to overthrow the
> law, but have made it applicable to the class of persons or the kind of acts clearly
> contemplated within its scope. The rule was thus early expressed in Bacon's
> Abridgment: "A statute ought sometimes to have such an equitable construction as
> is contrary to the letter." . . . In *Holmes v. Paris*, 75 Me. 559, it is said: "It has been
> repeatedly asserted in both ancient and modern cases that judges may in some cases
> decide upon a statute even in direct contravention of its terms.  In all of these cases
> the apparent defect of the statute is cured by making it apply according to its spirit
> to the act in its nature illegal or fraudulent."[citations omitted]
>
> Penal Code, section 207, as applied to a person forcibly taking and carrying away
> another, who by reason of immaturity or mental condition is unable to give his
> legal consent thereto, should, following the rule of *Lorenzen* hereinabove quoted,
> be construed as making the one so acting guilty of kidnaping *only if* the taking and
> carrying away is done for an illegal purpose or with an illegal intent.  [emphasis
> added]  So construed the legislative purpose will be preserved and furthered, and
> innocent persons who cannot have been within the legislative intention in adopting
> section 207 will be excluded from the operation of the law. It results that the
> instruction above quoted upon the intent necessary to constitute the crime of
> kidnaping under the facts of this case was erroneous. It also appears under the facts
> of this case to have been prejudicial. The defendant was more or less intoxicated.
> He was with the child from 4 p. m. to 5 p. m., when the lady first saw them together
> behind the fence. At that time both appeared to her to be fully clothed. Fifteen
> minutes later the police found them in the compromising position which they
> described. It seems highly improbable, if the defendant had the violation of section
> 288 in mind while he was leading the child, that he would have waited an hour to
> accomplish that purpose. Given an instruction that the defendant's purpose or intent
> must have been an illegal one in taking the child to the point where they were later
> discovered in order to render him guilty of kidnaping, it seems reasonably probable
> that the jury would have found that defendant had no such illegal purpose or intent
> in leading the child, and only formed the intent to violate section 288 at some time
> between 5 p. m. when they were observed fully clothed and 5:15 p. m. when the
> officers observed them partially undressed.

Id. at 766-68.  Because of the instructional error, Oliver's § 207 conviction was reversed.  See id.

In *Michele D.*, in addition to the issue regarding force that was discussed above, the Supreme Court also discussed Penal Code § 207(e)(1) and intent with respect to kidnapping cases involving infants or young children.  See In re Michele D., 29 Cal.3d at 610-12.  The Attorney General argued that a prosecutor did not need to prove in its case-in-chief that a defendant harbored an illegal purpose or intent when moving an unresisting infant/child, rather the absence of an illegal purpose or intent should be an affirmative defense pursuant to Cal. Penal § 207(e)(1). See id. at 610-11.  At the time, § 207(e)(1) stated that kidnapping under § 207 did not apply to "any person who steals, takes, entices away, detains, conceals, or harbors any child under the age of 14 years, if that act is taken to protect the child from danger of imminent harm."  Cal. Pen. Code § 207(e)(1) (2002 ed.); In re Michele D., 29 Cal.4th at 611 n.4.  *Michele D.* rejected the Attorney General's argument.  *Michele D.* explained that *Oliver* held that, "in the case of the kidnapping of an unresisting infant, it was necessary to prove that the defendant harbored an illegal purpose or intent so that individuals with lawful intentions could not be convicted of kidnapping."  Michele D., 29 Cal.4th at 611.  *Michele D.* also noted that *Oliver*'s "illegal purpose or intent" requirement was "reaffirmed" in *Hill*.  See id.  However, *Hill* did not need to decide "whether having an illegal purpose or intent *remained an element* of the offense because, in that case, we found that there was ample evidence of force or fear, which is the traditional requirement for a charge of kidnapping."  Id. (emphasis added).  *Michele D.* found that § 207(e)(1) "did not abrogate the 'illegal purpose or intent' requirement we set forth in *Oliver* because it is not inconsistent with this requirement."  Id. at 612.  Importantly, *Michele D.* also found that § 207(e)(1) did not overrule *Oliver* because the subsection was "too underinclusive."  Id.  "Were we to overrule *Oliver* and conclude that § 207 contains no 'illegal purpose or intent' requirement, [§ 207(e)(1)] would be the only recourse for a defendant who moved a child for a lawful purpose." Id.  In order to protect individuals who move an infant or young child for an innocuous purpose, "it is essential to *affirm* our decision in *Oliver* that the 'illegal purpose or intent' requirement *constitutes an element of the offense when the victim is an unresisting infant or child.*"  Id. (emphasis added).  *Michele D.* concluded by noting that its decision "affects only a narrow class of cases in which an unresisting infant or small child is taken away without any force or fear.  In the

1   typical kidnapping case, the prosecutor must prove that there was force, or fear, and does not need

2   to show an illegal purpose or intent." Id. at 612 n.5.

3      *Oliver* and *Michele D.* reflect that the California Supreme Court examined the crimes

4   within Penal Code § 207 twice in a forty year span (1961 to 2002). *Oliver* necessarily concluded

5   that there are two separate "general kidnapping" offenses encompassed within the language of

6   § 207. Under one offense, the forcible movement of an un-consenting person who is capable of

7   giving consent must be proven and the defendant's intent or purpose does not matter. See Cal.

8   Pen. Code § 207 (1961 ed.); Oliver, 55 Cal.2d at 765; see also In re Michele D., 29 Cal.4th at 612

9   n.5. Under the second offense, the movement of an unresisting infant/young child must be proven,

10  along with an illegal intent or purpose. See Oliver, 55 Cal.2d at 768;[7] see also In re Michele D.,

11  29 Cal.4th at 610-12 & n.5. In other words, when a particular type of victim is involved, consent

12  is irrelevant and an otherwise inapplicable *mens rea* must be proven.[8] *Michele D.* confirms this.

13  See In re Michele D., 29 Cal.4th at 610-12 & n.5. As quoted above, *Michele D.* recognized that

14  *Oliver* established a particular *mens rea* element depending upon who the victim was. See In re

15  Michele D., 29 Cal.4th at 610-12 & n.5. *Michele D.* expressly described *Oliver* as creating

16  required "elements" when the victim was an infant/young child and refused to overrule those

17  elements. See id. *Michele D.* also explained that its own holding was narrow and would not affect

18  the typical kidnapping case in which there is no need to establish an improper purpose or intent.

19  See id. at 612 n.5. Section 207's language did not change between *Oliver* in 1961 and Kenney's

20  conviction in 1974.

21      It is true that there are not lists of elements in the 1961/1974 version of § 207 or any

22  language that specifically addresses infant victims. The Court is unaware of, and the parties have

23  not cited to, any case that has found a statute to be divisible when the text of the statute itself not

24  contain some form of list or subsections. Nevertheless, elements are determined according to

25  ───────────────

26  [7] The Court again notes that although *Oliver* recognized that the "forcible" moving of a child was prohibited, for purposes of this portion of the order, the Court is assuming that *Oliver* clearly relaxed the force requirement for an infant/young child.

27

28  [8] It is again worth noting that *Oliver* reversed a § 207 conviction because the jury was not given an instruction that required the prosecution to prove that the defendant moved the infant/young child with an illegal intent or purpose. Oliver, 55 Cal.2d at 768.

1   principles of state law statutory interpretation.  See Almanza-Arenas, 815 F.3d at 475-76.  The

2   California Supreme Court applied those principles to the 1961 version of § 207 and found that,

3   despite the express language, § 207 contains two distinct crimes with distinct elements.  Were the

4   Court to hold that the absence of express divisions, lists, or subparts in the relevant portion of

5   § 207 was dispositive, the Court would be ignoring the reality of how California actually

6   interpreted and construed kidnapping under § 207 after *Oliver* – as containing two crimes with

7   distinct elements.  The California Supreme Court has twice affirmed its conclusion that the "illegal

8   intent or purpose" *mens rea* is a required element when a particular victim is allegedly kidnapped.

9   That was the law as it existed in 1974.  Therefore, pursuant to *Oliver* and *Michele D.*, the Court

10  holds that the 1974 version of § 207 contains distinct crimes with distinct elements and is a

11  divisible statute.

12          Because § 207 is divisible and Kenney pled guilty to that offense, the Court may examine

13  "the charging document, written plea agreement, transcript of plea colloquy, and any explicit

14  factual finding made by the trial judge to which the defendant assented."[9]  Altayar, 947 F.3d at

15  549.  Here, there is no written plea agreement, the transcript of the plea and sentencing colloquy's

16  do not contain any facts relating to the commission of the § 207 offense, and the trial court made

17  no relevant factual findings that Kenney assented to.  However, the information to which Kenney

18  pled in relevant part reads as follows:

19          [Kenney] is accused by the [L.A. County District Attorney] by this information, of
        the crime of kidnapping in violation of Section 207, Penal Code, a felony
20      committed as follows:  That the said [Kenney] on or about [February 26, 1974] at
        and in [Los Angeles County] did willfully, unlawfully and feloniously and forcibly
21      steal, take and arrest of Los Angeles, State of California, William J. Bessant, and
        carry said William J. Bessant into another county of the State of California, to wit,
22      the County of Ventura.

23  Doc. No. 183-1 at ECF p.48.

24          As can be seen, the information tracks the express language of § 207.  The information

25  does not allege either that William J. Bessant was an infant or incapable of giving consent, nor

26  does it allege that Kenney moved William J. Bessant with an illegal intent or purpose.  Cf. id. with

27  _____

28  [9] The United States urges the Court to examine the transcript of a preliminary hearing and a probation report.
    However, there is no indication that Kenney ever accepted any factual bases or assertions within either the probation
    report or the preliminary hearing.  Thus, the Court declines to examine these documents.  See Altayar, 947 F.3d at 549.

Oliver, 55 Cal.2d at 768 and Michele D., 29 Cal.4th at 610-12.  Criminal charging instruments,

such as an information, must include the essential elements of the offense being charged.  See

People v. Randazzo, 48 Cal.2d 484, 489 (1957); People v. Britton, 6 Cal.2d 1, 5 (1936); People v.

Soto, 74 Cal.App.3d 267, 273 (1977); People v. Atwood, 223 Cal.App.3d 316, 323 (1963); People

v. Burch, 196 Cal.App.2d 754, 764 (1961).  There is no indication in the exhibits provided to the

Court that any objections to the information or corrections to the information were ever made.

Therefore, because the information to which Kenney pled did not allege either that the victim was

an infant or otherwise incapable of giving consent or that Kenney moved the victim with an illegal

intent or purpose, both of which are essential elements for a "relaxed force" § 207 kidnapping

offense, see Michele D., 29 Cal.4th at 610-12; Oliver, 55 Cal.2d at 798, the Court concludes that

Kenney was charged with and pled guilty to general kidnapping under § 207 in which the victim

was not an infant, young child, or incapacitated person.

        In cases where the victim is not an infant, young child, or incapacitated, but is able to give

consent, there is no *mens rea* element and the force requirement is not relaxed.  See Michele D.,

29 Cal.4t h at 610-12; Oliver, 55 Cal.2d at 765, 768.  Kenney pled guilty to a § 207 kidnapping in

which the force requirement was not relaxed.  Therefore, the force described in *Rhoden*,

*Stephenson*, *Camden*, and *Hill* is the force that was required for Kenney's § 207 conviction.  The

level of force described in *Rhoden*, *Stephenson*, *Camden*, and *Hill* is consist with *Stokeling*,

*Dominguez*, and § 924(e)(2).

                        (C)        Conclusion

        Under the categorical approach, through the holdings of *Rhoden*, *Stephenson*, *Camden*, and

*Hill*, Kenney's 1974 kidnapping conviction under § 207 is a crime of violence under § 924(e)(2).

Alternatively, under the modified categorical approach, though the analyses and holdings of *Oliver*

and *Michele D.*, Kenney's 1974 kidnapping conviction under § 207 is a crime of violence under

§ 924(e)(2) because Kenney was not charged with kidnapping an infant/person incapable of giving

consent nor was it alleged that Kenney moved the victim with an illegal intent or purpose.

Therefore, the 1974 kidnapping conviction serves as Kenney's third prior conviction for a crime of

violence under § 924(e).  Any failure on the part of Kenney's attorney to make a *Johnson*

objection was not unreasonable, did not prejudice Kenney, and did not amount to a violation of the

Sixth Amendment right to effective assistance of counsel.  See Strickland v. Washington, 466 U.S.

668, 692 (1984) (holding that a claim of ineffective assistance of counsel requires a

petitioner/defendant to show that his counsel's performance fell below an objective standard of

reasonableness and that the deficiency was prejudicial); United States v. Kwan, 407 F.3d 1005,

1014 (9th Cir. 2005) (same).  In the absence of a violation of the Sixth Amendment, no relief

under § 2255 is available.

       3.     Certificate of Appealability

       28 U.S.C. § 2253 provides in pertinent part:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a
district judge, the final order shall be subject to review, on appeal, by the court of
appeals for the circuit in which the proceeding is held.

 (b) There shall be no right of appeal from a final order in a proceeding to test the
validity of a warrant to remove to another district or place for commitment or trial a
person charged with a criminal offense against the United States, or to test the
validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal
may not be taken to the court of appeals from–

    (A) the final order in a habeas corpus proceeding in which the detention
     complained of arises out of process issued by a State court;  or
    (B) the final order in a proceeding under section 2255.
  (2) A certificate of appealability may issue under paragraph (1) only if the
applicant has made a substantial showing of the denial of a constitutional right.
 (3) The certificate of appealability under paragraph (1) shall indicate which
specific issue or issues satisfy the showing required by paragraph (2).

       A court should issue a certificate of appealability when the petitioner shows that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

       In the present case, the Court finds that reasonable jurists may find it debatable that

Kenney has three prior convictions for "crimes of violence" for purposes of § 924(e).  If Kenney

did not have three prior convictions for "crimes of violence," then it is likely that he received

ineffective assistance of counsel in violation of the Sixth Amendment when his defense counsel

failed to raise the issue at sentencing.  Under these circumstances, the Court will grant Kenney a

1   certificate of appealability with respect to the following to issues:  (1) whether Petitioner has three

2   prior "crimes of violence" for purposes of § 924(e); and (2) whether Petitioner received ineffective

3   assistance of counsel when counsel failed to object that Petitioner did not have three prior

4   convictions for "crimes of violence" for purposes of § 924(e).  <u>See</u> 28 U.S.C. § 2253(c); <u>Slack</u>,

5   529 U.S. at 483-84.

6

7                                                **<u>ORDER</u>**

8         Accordingly, IT IS HEREBY ORDERED that:

9   1.       Petitioner's 28 U.S.C. § 2255 petition (Doc. No. 169) is DENIED;

10   2.      The Court grants petitioner a certificate of appealability on the following issues:

11         a.       Whether Petitioner has three prior "crimes of violence" for purposes of § 924(e)?

12                    and

13         b.       Whether Petitioner received ineffective assistance of counsel when counsel failed

14                    to object that Petitioner did not have three prior convictions for "crimes of

15                    violence" for purposes of § 924(e)?

16

17   IT IS SO ORDERED.

18   Dated:   <u>  July 6, 2020  </u>         <u>                    </u>

19                        SENIOR  DISTRICT  JUDGE

20

21

22

23

24

25

26

27

28